LeMiee, J., dissenting: I disagree with the majority holding that the agency contracts under consideration were not assignable property, that they were not in fact assigned and sold by the petitioner as capital assets, and that the commissions subsequently earned by the assignee and paid over to the petitioner as a part of the purchase price were ordinary income of the petitioner. The contracts were ordinary agency contracts. They called for certain booking agency services to be performed by the petitioner and personal entertainment performances by Frank Sinatra. While the services to be performed by Sinatra were unique and of a strictly personal nature, there is nothing to indicate that this is true of the services to be performed by petitioner or that those services could not have been performed as well by any other competent booking agency. In fact, the evidence is that these services were satisfactorily performed by MCA after the assignment of the contracts. Moreover, there is no legal restraint on the assignment even of strictly personal service contracts where the parties consent to the assignment, as did the parties here. See 6 C. J. S., p. 1074. The facts leave no doubt in my mind that the actions which the parties took were intended to effect and did effect a complete assignment and sale of the contracts rather than a farming out by the petitioner of the work which it was to perform under a sort of subcontract arrangement, as suggested in the majority opinion. I do not see how the fact that the old contracts were immediately canceled after the assignment and new contracts entered into between petitioner and MCA precludes a sale. Is that to say that there can be no capital gain sale of an asset unless the assignee continues to hold and use it? A payment by an insurance company to an exclusive agency for can-celation of the agency contract was held to be a capital gain in Jones v. Corbyn, 186 F. 2d 450. It seems to me wholly immaterial whether after the assignment MCA and Sinatra continued under the old contracts or entered into new contracts replacing them. The commissions involved here, as I understand it, are commissions paid to MCA on bookings made for Sinatra after the assignment of the contracts. Petitioner has conceded in this proceeding that $2,920.35 of the amount which it received from MCA in the taxable year was from performances by Sinatra under bookings made prior to the assignment of the contracts and therefore constitutes ordinary income. The respondent does not contend that any more than the $2,920.35 was commissions on performances under bookings made before the assignment. The subsequent commissions could not have been compensation for any services performed by the petitioner for petitioner performed no services whatever for Sinatra after the assignment of the contract. It is suggested in the majority opinion that petitioner merely agreed to let MCA perform the services which it was to perform under the contracts with Sinatra for a portion of the fee which MCA was to “collect” from Sinatra, and that “If one person, employed to do work, has another do the work for a part of the charge, the entire amount received is still ordinary income. The amount received by the petitioner from Sinatra through MCA was likewise ordinary income.” I find nothing in the facts stated or in the evidence to support the proposition that MCA was in any sense an employee or subcontractor of petitioner in respect of these contracts. After the assignment MCA was the principal and only contractor with Sinatra. Petitioner had definitely terminated its agency relationship with and its services to Sinatra. As I view our question here, it is simply whether the gain from the sale by an agent of an exclusive booking agency contract is capital gain or whether it is ordinary income. I think that the interest of an agent in such a contract is a property right or “capital assets” subject to sale just as was the insurance agency in Jones v. Corbyn, supra. It is my opinion that the amount paid to petitioner by MCA was not petitioner’s earnings and was not taxable to petitioner as ordinary income except for the commissions on services performed by Sinatra under bookings arranged for him by petitioner prior to the assignment of the contracts to MCA. The petitioner admits its liability to that extent. Arundell, Black, Johnson, and Tietjens, JJ., agree with this dissent.